IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAMELA GRONEMEYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-cv-00571-WDS-DGW |
| ) | |
| CROSSROADS COMMUNITY HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant Crossroads Community Hospital's ("Crossroads") motion to dismiss plaintiff's third amended complaint (Doc. 51), to which plaintiff has responded (Doc. 54) and defendant has replied (Doc. 55). Plaintiff Pamela Gronemeyer ("Gronemeyer") alleges that she is entitled to damages as a result of Crossroads terminating her employment after she engaged in what Crossroads allegedly knew to be protected conduct under the False Claims Act of 31 U.S.C. § 3730 ("FCA"). Defendant moves this Court to dismiss plaintiff's third amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, defendant's motion to dismiss (Doc. 51) is **GRANTED**.

### BACKGROUND

Plaintiff is a citizen of Madison County, Illinois. Defendant is an Illinois corporation which provides medical services, and receives significant monies from the United States in the form of reimbursements for Medicare and Medicaid claims.

From 1998 until 2009, defendant employed plaintiff as a pathologist. As part of her employment, plaintiff served on the defendant's Utilization Management Committee, Infection

1

Control Committee, Medical Executive Committee, and Quality Improvement Committee, wherein her responsibilities included reviewing records and approving transfusions, and conducting after-the-fact quality assurance assessments of the medical necessity for transfusions. In the course of performing these duties, plaintiff allegedly came to believe that defendant was submitting false claims to officials of the United States for the purpose of obtaining Medicare and Medicaid reimbursements. Plaintiff asserts that she brought these findings to her superiors, and as a result, was terminated on August 31, 2009. She alleges that her termination was a violation of the FCA, for which she demands relief.

## LEGAL STANDARD

A motion pursuant to Fed. R. Civ. P. 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." To state a claim, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, the Court must review a complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts alleged, and draw all possible inferences in the plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Detailed factual allegations are not required, but the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

Additionally, Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Claims made under the FCA are subject to the heightened pleading requirement of Rule

9(b) and, therefore, must be stated with particularity. *See United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003); *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005).

## ANALYSIS

The FCA prohibits any person from making false or fraudulent claims for payment to the United States. 31 U.S.C. § 3729(a). In 1986, amendments to the FCA created a private cause of action for an individual retaliated against by his or her employer for assisting with an FCA investigation or proceeding. 31 U.S.C. § 3730(h). This provision is controlling here.

Accordingly, in order for plaintiff to bring an action against defendant under § 3730(h), she must show that (1) her actions were taken "in furtherance of" an FCA enforcement action and were therefore protected by the statute; (2) that defendant had knowledge that she was engaged in this protected conduct; and (3) that the discharge was motivated, at least in part, by the protected conduct. *Brandon v. Anesthesia & Pain Mgmt. Associates, Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002). Defendant seeks to dismiss plaintiff's third amended complaint on the theory that she has not adequately pleaded all of the FCA's requisite elements.

**I. In Furtherance Of**

According to the Seventh Circuit, actions are taken "in furtherance of" an FCA enforcement action and thus "protected" if "'(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.'" *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004) (quoting *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002)). This test involves an objective component as well as a subjective one. *Fanslow*, 384 F.3d at 479-80. Thus, the employee must use this test to "show that an FCA action

is a 'distinct possibility' at the time of the investigation." *Id.* (citing *Neal v. Honeywell Inc.*, 33 F.3d 860, 864 (7th Cir. 1994)). For the reasons that follow, this Court **FINDS** that the plaintiff's actions were taken "in furtherance of" an FCA action.

Plaintiff, in her reply brief, citing to a Ninth Circuit opinion, argues that an employee's action is "in furtherance of" if she is "investigating fraud." The Seventh Circuit, however, requires more than merely "investigating fraud" in order to show actions were taken "in furtherance of." Specifically, plaintiff must show that an FCA action was a "distinct possibility" at the time she investigated the alleged fraud by demonstrating that she, in good faith believed, and a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government. *See Fanslow*, 384 F.3d at 480.

Plaintiff asserts that she described in detail, to defendant, seven different cases where she suspected fluids were improperly administered to justify subsequent, unnecessary transfusions for which the government was billed. In response to these seven different cases, plaintiff undertook an independent review of her suspicions at her own expense. In addition, she brought forth the information related to the alleged fraud, including the results of her independent review, to her superiors, through conversations, emails, and letters.

Defendant argues that "complaints about internal improprieties . . . do not amount to FCA-protected activity." (Doc. 55). This is not necessarily true. *See Neil*, 33 F.3d at 864 (finding it appropriate for plaintiff to complain through corporate channels). Accordingly, this Court is satisfied that plaintiff has sufficiently alleged that: (1) the plaintiff in good faith believed, and (2) a reasonable employee in the same or similar circumstances might believe, that defendant was committing fraud against the government. Thus, an FCA action was a "distinct

possibility" at the time of plaintiff's investigation into the alleged fraudulent activities of Crossroads.

Defendant also argues that plaintiff does not plead with particularity the "in furtherance of" element because she does not allege that she told defendant that she believed defendant was submitting false claims to the government, that she was investigating the possibility of false claims, or that she was contemplating bringing a lawsuit against defendant for potential false claims. While it is true plaintiff does not allege these facts, defendant incorrectly overstates the "in furtherance of" requirements of the Seventh Circuit. If this Court agreed with defendant's argument then it would essentially require the plaintiff to have actual knowledge of the FCA. *See, Fanslow*, 384 F.3d at 479-81 (employee need not have actual knowledge of the FCA; and "Congress intended to protect employees from retaliation while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together."). Because actual knowledge of the FCA is not required, plaintiff's pleadings are sufficient under Rule 12(b)(6) and Rule 9(b) with respect to this element.

## II. Employer Knowledge of Protected Conduct

With respect to this element, the employee "must demonstrate that [her] protected conduct put [the employer] on notice of the distinct possibility of a *qui tam* action." *Fanslow*, 384 F.3d at 483 (citing *Brandon*, 277 F.3d at 945). A "retaliatory complaint must be dismissed if the employer did not know about the whistleblower's protected conduct before it discharged [her]." *Id.* (citing *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999)). Determining at which point an employer is deemed to have received such "notice" depends on whether investigating fraud is part of the employee's job. *See Fanslow*, 384 F.3d at 483-84. If investigating fraud is part of the employee's job then the employee is held to a heightened notice

standard. *Id.* at 483; *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 n.7 (10th Cir. 1996) ("[A]n individual whose job entails the investigation of fraud . . . must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations."). Such an employee is referred to as a "fraud-alert" employee and "may be expected to use words like 'illegal' or 'unlawful' when sharing her concerns with her employer." *Fanslow*, 384 F.3d at 484 (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)). If, however, the employee is not deemed a "fraud-alert" employee then the employee need only show that her employer was aware of her investigation. *Id.*

In the instant case, plaintiff described to defendant, in detail, seven different cases where she suspected fluids were improperly administered to justify subsequent, unnecessary transfusions for which the government was billed. Plaintiff further alleges that in response to her findings, she repeatedly complained, warned, and otherwise sought to bring her beliefs to defendant's attention. Specifically, plaintiff alleges that she alerted Debbie Cothern, Tom Miller, Wane Smith, Ed Cunningham, Carolyn Lipp, and Chuck Reece, through conversations, emails, and letters. Reviewing these facts in the light most favorable to the plaintiff, defendant was, at the very least, aware of plaintiff's investigation. Satisfying this element under the FCA, therefore, turns on whether plaintiff is considered a "fraud-alert" employee. For the reasons that follow, the Court **FINDS** that plaintiff is a "fraud-alert" employee, and as such, is subject to § 3730(h)'s heightened pleading standard – a standard plaintiff has not met.

Two Seventh Circuit cases are illustrative of the differences between an employee who is not considered a "fraud-alert" employee and one who is. First is *Fanslow v. Chicago Mfg. Center, Inc.*, where the Seventh Circuit, reversing the district court's holding, held that the

plaintiff-employee was not a "fraud-alert" employee.  384 F.3d at 484-85.  In *Fanslow*, the defendant-employer hired the plaintiff-employee as its senior program manager.  *Fanslow v. Chicago Mfg. Ctr.*, No. 01 C 3558, 2003 WL 25719856, at *1 (N.D. Ill. Mar. 25, 2003) *rev'd and remanded sub nom. Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469 (7th Cir. 2004).  In that position, the plaintiff-employee's primary objective was to consult with the defendant-employer's clients regarding information technology, and improve their management information systems.  *Id.*  Plaintiff-employee's job, therefore, did not have any reporting or investigatory duties, and the Court decided that he was not required to use any "magic words" to put the defendant-employer on notice of his investigation into the alleged fraud.  *Fanslow*, 384 F.3d at 484.

In contrast to *Fanslow* is *Brandon v. Anesthesia & Pain Mgmt. Associates, Ltd.*, where the Seventh Circuit determined that the plaintiff-employee was a "fraud-alert" employee.  277 F.3d at 945.  In *Brandon*, the plaintiff-employee was an anesthesiologist for the defendant-employer, and part of his employment duties was investigating and filling out Medicare billing reports.  *Id.* at 945.  The Court found particularly noteworthy the investigation component of the plaintiff-employee's job duties.  *Id*.  The Court reasoned, "the fact that [plaintiff-employee] was alerting his supervisors to the possibility of their non-compliance with the [Medicare] rules would not necessarily put them on notice that he was planning to take a far more aggressive step and bring a *qui tam* action against them or report their conduct to the government."  *Id.*  What is even more remarkable about *Brandon*, is that in alerting his supervisors, the plaintiff-employee actually used terms like "illegal," "improper," and "fraudulent," yet the Court still determined that the defendant-employer was *not* on notice.  *Id.* at 944.  The *Brandon* court found that although the plaintiff had notified the shareholders about his concerns regarding their billing

7

practices and had contacted Medicare and Medicaid regarding their billing rules, the court could not conclude that these actions put the defendant on notice of the "distinct possibility" of a *qui tam* action. *Id*. The court further reasoned that the plaintiff "never explicitly told the shareholders that he believed they were violating the FCA and had never threatened to bring a *qui tam* action. He never threatened to report their conduct to the government until after he was discharged." *Id.* at 944-45. The court determined that the plaintiff was merely "trying to convince the shareholders to comply with the Medicare billing regulations," and that "[s]uch conduct is usually not protected by the FCA, and "usually does not put an employer on notice of potential FCA litigation." *Id*. at 945.

Comparing plaintiff's employment duties with those of the plaintiff-employees in the two cases noted above, it is clear that plaintiff is a "fraud-alert" employee. Similar to the plaintiff-employee in *Brandon*, plaintiff had reporting or investigatory duties. Specifically, by plaintiff's own description, as part of her employment duties, plaintiff reviewed records, and both approved transfusions, and conducted after-the-fact quality assurance assessments of the medical necessity for transfusions. Plaintiff further alleges that it was in this capacity (in other words, in fulfilling her duty of reviewing records, approving transfusions, and conducting after-the-fact quality assurance assessments of the medical necessity for transfusions) that she came to believe that the defendant gave patients unnecessary fluids in order to obtain significant profits from governmental reimbursements. These facts are particularly determinative considering the amount of weight the Seventh Circuit gave such reporting or investigatory duties in both *Fanslow* and *Brandon*. *See Fanslow*, 384 F.3d at 484; *Brandon*, 277 F.3d at 945.

Moreover, plaintiff, failed to use terms such as "illegal," "improper," "fraudulent," or any analogous words that would connote a similar meaning. Indeed, plaintiff merely alleges that

8

once she developed the belief that defendant was partaking in fraud, she "repeatedly complained, warned, and otherwise sought to bring her beliefs to [d]efendant's attention . . ." in the form of "conversations, emails, and letters . . . ." (Doc. 46). To have plead this element successfully, plaintiff needed to go further than this, and plead with particularity exactly what was said when information related to defendant's alleged fraud was brought to her superiors. Plaintiff has not alleged that any of the "magic words" were used when she brought information to her superiors, or alternatively, that plaintiff's supervisors were explicitly told that she believed they were violating the FCA. Plaintiff has failed to allege that her employers were on notice of the distinct possibility of a *qui tam* action, and has alleged no facts to establish that her employers would have known that she was doing anything but performing the duties required of her job. The fact that she conducted an independent investigation at her own expense almost certainly fell outside the scope of her duties, but nevertheless, plaintiff fails to allege that, as a result of this investigation, defendant knew of the distinct possibility of a *qui tam* action.

Plaintiff's third amended complaint lacks allegations that the defendant had notice that plaintiff was acting in furtherance of bringing a *qui tam* action, and therefore, the retaliation claim fails as plead. As a "fraud-alert" employee, plaintiff is subject to the heightened notice standard, and plaintiff has failed to satisfy the Seventh Circuit's pleading requirement with respect to this element, and consequently, for an FCA action as a whole. Defendant's motion to dismiss (Doc. 51) is **GRANTED** on this basis.

### III. Discharge Motivated by the Protected Conduct

As to the final element, the employee "must demonstrate that the discharge was motivated, at least in part, by the protected conduct." *Brandon*, 277 F.3d at 944. "Once the plaintiff has made this showing, 'the burden of proof shifts to the employer to prove

affirmatively that the same decision would have been made even if the employee had not engaged in protected activity.'" *Fanslow*, 384 F.3d at 485 (quoting *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 n.4 (D.C. Cir. 1998)).

The Court agrees with defendant's assertion that in light of the fact that plaintiff failed to sufficiently allege that defendant was on notice of a potential FCA action, it would be impossible for any purported action taken by the defendant to be in retaliation as contemplated by § 3730(h). In other words, if defendant was not on notice of a potential FCA action, then plaintiff's discharge could not have been motivated, *at all*, by the protected conduct. Moreover, an FCA action pursuant to § 3730(h) requires that all three elements be sufficiently plead, which the plaintiff has failed to do.

## CONCLUSION

Accordingly, the Court **GRANTS** defendant Crossroads' motion to dismiss (Doc. 51), and plaintiff's third amended complaint is dismissed for failure to state a claim upon which relief can be granted.

The plaintiff is granted leave to file a fourth amended complaint on or before September 6, 2013, which cures the deficiencies identified infra, if she is able to do so. If plaintiff chooses not to file a fourth amended complaint by that date, the case may be dismissed with prejudice.

**IT IS SO ORDERED.**

**DATE: August 26, 2013**

                                                                     /s/ WILLIAM D. STIEHL
                                                                        DISTRICT JUDGE